IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TAURUS LEVON WILLIAMS,

    Plaintiff,

v.                                                      CASE NO. 1:08-cv-00235-SPM -GRJ

W.G. JOHNSON & SON, INC.,
CALVIN CARLISLE, and
WILLIAM GLENN JOHNSON, III,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendants' Motion To Dismiss Second Amended Complaint. (Doc. 37.) Plaintiff has filed a Response (Doc. 41) and therefore the motion is ripe for review. For the reasons discussed below, Defendants' Motion to Dismiss Second Amended Complaint is due to be **GRANTED** solely with respect to the claims against Defendants Carlisle and Johnson and in all other respects is due to be **DENIED**.

**I. Introduction**

Defendants request dismissal of the Second Amended Complaint (Doc. 12) pursuant to Rule12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff has failed to state a claim upon which relief can be granted. Defendants William G. Johnson, III and Calvin Carlisle also contend that they are not proper defendants to a claim under Title VII of the Civil Rights Act of 1964 ("Title VII").

Plaintiff, proceeding *pro se*, initiated this case by filing a form complaint naming Defendants William G.  Johnson, III ("Johnson") and Calvin Carlisle ("Carlisle") and

purporting to allege claims under "Civil Rights Title VII, Florida state hate crime law, and United States hate crime law." (Doc. 1.) Plaintiff filed for and received the necessary Dismissal and Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC") on December 1, 2008. (Doc. 4.) On January 26, 2009 the Court entered an order finding that the original complaint failed to state a claim upon which relief could be granted and directing Plaintiff to amend his original complaint. (Doc. 5.) On February 13, 2009 Plaintiff filed a First Amended Complaint against Carlisle and Johnson, again using the form provided for *pro se* Civil Rights complaints under 28 U.S.C. § 1331 or § 1446 or 42 U.S.C. § 1983. This time Plaintiff advised that he was bringing a claim under the "Civil Rights Act of 1963 Title 7." (Doc. 6.) The Court dismissed any claims raised by Plaintiff under 42 U.S.C. § 1983 for failing to state a claim upon which relief may be granted. (Doc. 10.) The Court, however, permitted Plaintiff to proceed to the extent he was alleging a claim for hostile work environment under Title VII. The Court, accordingly, directed Plaintiff to file a second amended complaint. (Doc. 11.) On June 29, 2009 Plaintiff complied and filed a Second Amended Complaint naming Calvin Carlisle and William G. Johnson, III as defendants and alleging a claim for racial discrimination under Title VII. (Doc. 12.) This Second Amended Complaint is the amended pleading challenged by Defendants in the instant motion to dismiss.

## II.  Standard of Review

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968). For the purposes of a motion to dismiss, the Court must

view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the complaint and written instruments attached as exhibits. Fed R. Civ. P. 10©; GSW, Inc. v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir.1993).

In Ashcroft v. Iqbal, the Supreme Court set out a two prong approach for considering a motion to dismiss under Rule 12(b)(6): the court must first determine what factual allegations in the complaint are entitled to a presumption of veracity, and then assess whether these facts give rise to an entitlement for relief. 129 S. Ct. 1937, 1950 (2009). In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." Id. at 1951.

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007). However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

### III. **DISCUSSION**

Plaintiff's Second Amended Complaint purports to state a claim for racial discrimination under Title VII of the Civil Rights Act of 1964. In ruling on Defendants' Motion, the Court is mindful that *pro se* pleadings like the Second Amended Complaint are afforded the benefit of liberal construction. See Tannenbaum v. United States, 148 F.3d 1262 (11th Cir.1998).

The material facts alleged in this case as disclosed in the Second Amended Complaint are as follows. Plaintiff was employed by Defendant W.G. Johnson & Son, Inc. (the "Company"), a construction company, from July 2007 until January 2008. Plaintiff alleges that on the morning of November 15, 2007 he arrived at his place of employment and parked his vehicle sideways in the Company's parking lot. Plaintiff remained in his vehicle and was then approached by the shop assistant, Jamie Weartherington, who asked the Plaintiff if Plaintiff's vehicle would remain in that spot all day. Plaintiff responded no. Plaintiff's supervisor, Bill Jackson, then arrived and Plaintiff exited his vehicle and approached Mr. Jackson and the mechanics shop. As Plaintiff entered the mechanics shop, he alleges that Calvin Carlisle, the mechanics shop supervisor, put an arm around his shoulders, guided Plaintiff towards the parked vehicle, and asked if Plaintiff owned the vehicle. After Plaintiff said yes, Carlisle stated: "'Let me tell you a little something about me. Me and Jamie are from the old school. When we meet boys that don't listen, there is a bull rope out back. We take them out back tie them up to a tree and whip them till they understand what it is we are trying to tell them.'"

Plaintiff also alleged that there were several other Caucasian employees present

when these comments were made who laughed at Mr. Carlisle's comments.  The only Caucasian employee who was present at the time that did not laugh was Plaintiff's supervisor, Bill Jackson, who stated to Plaintiff that Mr. Carlisle should not have made the comment.  Plaintiff alleges that he then contacted his wife but that his cell phone battery died while he was speaking with his wife, prematurely ending the call, and that his wife then called the police.  A police officer then called Plaintiff, who stated to the police officer that he was fine at the time.  A police report was later filed in connection with the incident.  Plaintiff resigned his employment with the Company on January 3, 2008,  47 days after the November 15, 2007 incident.  Plaintiff alleges that he resigned his employment with the Company due to fear from the incident.

    A.    **Hostile Work Environment Claim under Title VII**

To prove that he was subjected to a hostile work environment under Title VII, Plaintiff must establish the following elements: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his protected status; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and to create a discriminatory and abusive working environment; and (5) that Defendants were either vicariously or directly responsible for the abusive environment.  <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002).  Defendants contend that Plaintiff's Second Amended Complaint should be dismissed because it contains insufficient factual allegations with respect to the third, fourth and fifth elements.

With regard to the first element of a hostile work environment claim there is no issue. Plaintiff is African-American a protected class under Title VII.

With regard to the second element of a hostile work environment claim, Plaintiff alleges the following facts to demonstrate that unwelcome remarks were made. Plaintiff alleges that Carlisle's comments were directed at Plaintiff – the only African-American present – in front of a crowd of Caucasian employees of the Company. According to Plaintiff, Carlisle used the derogatory term "boy" – a term which historically has been directed at African-Americans – in conjunction with threatened action that historically has been perpetrated upon African-Americans by members of Carlisle's race. Plaintiff allegedly complained to his supervisor immediately after the incident as well as to his wife. Plaintiff was so concerned by the threats that his wife called the police on his behalf. Plaintiff contends that he felt "threatened, harassed and intimidated" by Mr. Carlisle's comments and that the comments were "degrading," "very offensive, and disrespectful. These factual allegations are specific and not conclusory and are sufficient to demonstrate that the remark was unwelcome. The Court, therefore, concludes that at this stage of the case the allegations as to the second element of the hostile work environment claim are adequate to survive a motion to dismiss.

With respect to the third element of a hostile environment claim under Title VII, Plaintiff must allege that the harassment was based upon Plaintiff's protected status, in this case Plaintiff's race. Plaintiff's claim is based upon the fact that Carlisle specifically used the word "boy" with reference to Plaintiff. While the Supreme Court has observed that the use of the word "boy" "will not always be evidence of racial animus" the term "boy," standing alone, is, conversely, not always benign. Ash v. Tyson Foods, Inc., 546 U.S. 454, 456 (2006). The "speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." Id.

In this case, Plaintiff specifically alleges that Defendant Carlisle placed his arm around Plaintiff and told Plaintiff that Carlisle and Jamie Weartherington, a fellow Caucasian Company employee, were "from the old school." He then stated that "when we meet boys that don't listen" that they use the bull rope out back to tie those "boys" up and whip them until such "boys" listen.

Viewing the allegations in the Complaint as true – which the Court must in considering a motion to dismiss – the Court concludes that the context of the remark certainly is suggestive of racial animus. The reference to the word "boy" was directed to Plaintiff, an African-American, accompanied by a threat to tie Plaintiff to a tree and whip him. The context of this statement, made by a Caucasian supervisor, while placing his arm around the shoulders of a black employee in front of a group of Caucasian employees, and threatening to whip him cannot be considered benign. Accordingly, the Court concludes these allegations are sufficient to satisfy the third element of a hostile work environment claim.

The fourth element of hostile work environment claim is whether the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and to create a discriminatory and abusive working environment. To satisfy this element, the harassing behavior "must result in both an environment that a reasonable person would find hostile or abusive" and an environment that "the victim subjectively perceives to be abusive." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). Thus, Plaintiff must demonstrate both an objective and a subjective component. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The objective component is judged by looking at the totality of the circumstances, including the

frequency of the discriminatory conduct, its severity, whether the discriminatory conduct was physically threatening or humiliating or instead was just a mere offensive utterance, and whether the conduct unreasonably interfered with an employee's work performance.  Id.  The Eleventh Circuit has recently clarified that the severity of the discrimination alone can make it actionable under Title VII without requiring that it also be pervasive.  Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010) (en banc)("Either severity *or* pervasiveness is sufficient to establish a violation of Title VII.").

In requesting dismissal of the Second Amended Complaint, Defendants rely upon Alexander v. Opelika City Schools, 352 Fed. Appx. 390, 393 (11th Cir. 2009).  In Alexander  a black employee's supervisor called him "boy" eight times over a two year period and also made a comment that he knew how to tie a noose around a person's neck. The Alexander panel concluded that this conduct was not sufficiently severe or pervasive because the comment about the noose was not directed toward the plaintiff, the plaintiff had testified he was not even sure whether the noose comment referred to black people, and "because none of the alleged racial comments contained threats of physical violence." Id.  Unlike Alexander when the Defendant in this case referred to Plaintiff as "boy" the Defendant allegedly made threats of physical violence (i.e "we will whip you out back") directly to Plaintiff while the Defendant had his arm around Plaintiff.  Further, the threat was made to Plaintiff in front of a crowd of fellow Caucasian employees.  These actions are sufficient to demonstrate  an environment that a reasonable person would find hostile or abusive and goes beyond the benign use of the term "boy" found by the Alexander court to be insufficient to support a claim for hostile

work environment based upon racial animus.

Plaintiff also alleges that he "truly felt threatened, harassed, and intimidated" as a result of Carlisle's comments. According to Plaintiff, he called his wife immediately after the incident and his wife was concerned enough that when Plaintiff's cell phone battery died during that conversation she immediately called the police. These allegations are sufficient to demonstrates that Plaintiff subjectively considered the harassment to be severe.

Defendants attempt to characterize the remark as a "stray" comment in arguing that Carlisle's remark was not severe and did not alter the terms and conditions of Plaintiff's employment. The Supreme Court has noted that simple teasing, offhand comments and isolated incidents of discrimination generally do not constitute discriminatory changes in the terms and conditions of an employee's employment. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Generally, stray discriminatory comments, in isolation, will not suffice to alter the terms and conditions of an employee's work environment. McCann v. Tillman, 526 F.3d 1370, 1379 (11th Cir. 2008).

Here, Plaintiff alleges that after the November 15, 2007 incident he was uncomfortable attending work; he did not want to enter the mechanics shop even though the employee restroom was located there; he suffered persistent sleeplessness and migraine headaches; and he constantly felt the need to look over his shoulder while at work. Plaintiff also alleges that he suffered serious psychological and physical consequences as a result of Defendant Carlisle's comments. Thus, if Plaintiff's allegations are accepted as true, these facts demonstrate that the incident may have

involved more than just use of a stray comment by a joking supervisor, but instead was an incident involving severe harassment that left lasting psychological and physical scars upon Plaintiff. Determination of whether the incident did or did not rise to this level is not appropriate at the pleading stage on a motion to dismiss.

Defendants also argue that because 47 days elapsed between the November 15, 2007 incident and Plaintiff's resignation the incident was a brief and isolated incident that was insufficient to alter the terms and conditions of Plaintiff's employment with the Company. Defendants, therefore, contend that the factual allegation that fear caused Plaintiff's resignation is conclusory and is not entitled to the presumption of truth under Iqbal.  Whether the incident was causally connected to Plaintiff's constructive discharge from the Company remains to be seen. However, in the Eleventh Circuit a one month gap between the protected activity and the adverse action has been held to be sufficient to establish a causal connection in a Title VII discrimination claim.  See Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986).

In this case, while the period of time between the incident and Plaintiff's resignation was longer than one month it was not that much more and certainly within a relevant time frame to create a sufficient factual issue as to causation. Indeed, Plaintiff has sufficiently alleged detail in explaining the reasons for the lapse of time between the incident and his resignation.  Plaintiff contends that he continued to work at the Company for 47 days after the incident because he had just moved to the area and it was very hard to find another job. Plaintiff contends that because he had bills to pay and was already in debt he did not have the option of quitting immediately after the incident.  Accordingly, the Court concludes that there are sufficient facts suggested by

Plaintiff to demonstrate that is was plausible that Plaintiff's resignation was causally connected to the incident.

Lastly, Defendants also argue that Plaintiff has failed to allege sufficient factual allegations in the Second Amended Complaint to demonstrate the fifth and final element of a hostile work environment claim – that the employer is responsible either under a theory of vicarious or direct liability. The Court disagrees. In Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) the Supreme Court concluded that an employer "is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."  Here, Plaintiff alleges that Carlisle was the Company's mechanics shop supervisor – and although Carlisle was not Plaintiff's direct supervisor – Carlisle possessed significant supervisory authority within the Company to suggest that the Company could be held vicariously liable. Moreover, Plaintiff alleges a crowd gathered and watched Carlisle threaten Plaintiff, and that Plaintiff's direct supervisor was present as a part of that crowd. Thus, if true, these facts would be sufficient to place the Company on notice of the alleged incident.

### B.    Constructive Discharge Claim Under Title VII

Defendants also challenge the sufficiency of the allegations in the Second Amended Complaint to establish a constructive discharge under Title VII.  In order to establish a constructive discharge, a plaintiff must prove that his working conditions "'were so difficult . . . that a reasonable person would have felt compelled to resign," meaning that Plaintiff "must do more than merely show that [he] was subjected to actionable harassment."  Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272,

1282 (11th Cir. 2003). As the Eleventh Circuit has noted, "'[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment." Id. (quoting Hipp v. Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001)).

In this case Plaintiff has alleged that he was forced to resign his employment with the Company as a result of the hostile work environment created by Carlisle's threatening comment. Whether the conduct was sufficient to demonstrate that the working conditions became so difficult to compel Plaintiff to resign remains to be seen. At this stage of the proceedings, however, Plaintiff has alleged enough to suggest that the conduct was sufficient to cause his resignation.

### C. Plaintiff's Title VII Claim Against Defendants Johnson and Carlisle

Lastly, Defendants contend that a Title VII suit against an individual employee, as opposed to the employer, is improper. The Court agrees. There is no question that "relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, *regardless* of whether the employer is a public company or a private company." Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006). Individual employees, like Carlisle and Johnson, cannot as a matter of law, be held liable for violating Title VII even if their actions would support a violation of Title VII. Plaintiff's sole recourse under Title VII is to sue his employer for any violations of Title VII. Accordingly, Defendants' Motion To Dismiss should be granted with respect to Defendants Johnson and Carlisle and the Title VII claims against Johnson and Carlisle should be dismissed with prejudice.

## IV.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion To Dismiss Second Amended Complaint should be **GRANTED** with respect to the Title VII claims against Defendants Calvin Carlisle and William G. Johnson, III and in all other respects should be **DENIED**.

**IN CHAMBERS**  this 15th day of November 2010.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**